In this particular case, the lawsuit was filed, so this is what I would have to add. This case that was filed that we're talking about here all involved claims, pretty much, that predated the settlement agreement that was entered into between Bridgeport and Tilmon Jones in 2007. We're familiar with what... This is my point. One's a lawsuit and the other is motions. But this is my point. Is there a different argument? Yes, I do. And if you indulge me for one second, because I think this is important. They knew at the time they filed this lawsuit that it was barred by the settlement agreement. The only reason they filed the first case seeking to set aside the settlement agreement was because they wanted to use these stale claims, these released claims, to obtain a settlement from Bridgeport on claims that had been released. So they filed the first case knowing that there was no basis to set aside that settlement agreement on the grounds of fraud to use it as leverage for this case and to obtain a settlement in this case. That is precisely what the Janky Court said is their mode of operation. Mr. Reed was not the only one involved with that. Mr. Tenish was involved with that. It was all one big picture. And the Bridgeport v. Smith case that's not before this panel, but which the Sixth Circuit awarded sanctions against Mr. Tenish for filing a frivolous appeal for a dollar, was basically filed at the same time. So this litigation was all filed as a package in order to extract a settlement that was not deserved. You cannot claim that $20,000 will deter a scheme like that when these lawyers, Mr. Reed in particular, has been engaged in this type of conduct for many, many years. I would state, Your Honor, that of all the lawyers in this courtroom, I know I have never been sanctioned for Rule 11, and I would bet that virtually everyone standing here today that's going to be before Your Honors has never been. These lawyers have been sanctioned multiple times. They filed this entire litigation as a package to extract a settlement that they did not deserve. I receive a phone call demanding a million dollars in 48 hours. And so the point being, Your Honor, that he can come in here, Mr. Tenish can come in here and say, I'm contrite, I want to appear contrite. I'm asking you if you have arguments that you haven't already made. I do not believe I do. I'll hear what Mr. Tenish has to say. Thank you. Mr. Tenish, how is $20,000 sufficient when there's a finding by the district judge that you were harassing the defendant and given the four squares of the language of the release that you had signed previous to initiating this particular lawsuit? How is $20,000 under those circumstances sufficient to deter you? I want to talk about the nature of this second lawsuit, if I may, because it puts it in context. The rights that we're talking about, we're talking about copyright interests that were... Well, no, wait a minute. I'm dealing with the district court findings that you harassed, that the lawsuit was filed for harassment purposes, and that given the language of the four squares of the release that had been previously executed, you filed the claim. How is $20,000 under those circumstances... May I finish my question? How is $20,000 sufficient under those circumstances to deter you? The case was dismissed before we even got a scheduling order. I am deterred because my claims were for declaratory judgment. The life of Mr. Tillman's copyrights, his intellectual property, has rights in the future. The claim was to get clear title to those rights, to say that the Tillman heirs had rights to those musical copyrights for the rest of the life of the term of their copyrights. I was mistaken. I felt that the term of the release, I was going for future claims for the future life of that copyright interest, for example. But doesn't the release itself say future claims? What I was... It does indeed, but at the same time there was a shelf life, and there still is a shelf life of those copyrights. That's the mistake that I made in this, believing that I could kind of, the equivalent of quieting title to the property. I was looking at it from an intellectual property standpoint. That's not answering Judge Maloney's question, though, as to why $20,000 is enough to deter you, frankly, from doing this again. I can completely say that my time with this is deterred because there will be no other future actions. I'm deterred in the short term, the medium term, and the long term, and here's why. In the short term, I have the stigma of the sanction. In the medium term, I am deterred because I will go back and look at how I practice law. That's the takeaway from a sanction, and that I will not get involved in cases that have these prior adjudications and the settlement. That's where I made the mistake. Maybe it was, I'm not going to use the phrase of looking for a way for zealous advocacy, but I was searching for a way to assist the Tillmaneers to reclaim at least some of the rights going forward. It was barred by the release. Is it in the record that you knew about what I'll refer to as the $1 million conversation? No. I will say under oath here before this panel, I did not have any prior contact with Mr. Reid. Well, if I put myself under oath, I consider myself under oath. I did not have any contact with Mr. Reid prior to him making that phone call to Mr. Bush. In Mr. Reid's mind, I believe it was in his way of making a settlement offer, but I had no part of that. I was not involved in that, and I don't know what that conversation entailed. I do understand it was taken as an unsupported demand for money in Mr. Reid's mind to settle the case, but Mr. Bush has taken the position that it's extortion. I apologize for that. I wasn't aware of it. I wasn't part of it. Let me ask you a question about the case law. Can you cite to us, are you aware of any case where you had findings of the nature that the district court made here, namely that there was harassment utterly without legal or factual support, et cetera, and there's a sanction award. The lawyer's reasonable fees are a certain number, and the court awards as a sanction only one-ninth of that number. Yes. As a deterrent. Yes. Is there a case that says basically a 10% of actual fee award is enough? There was actually a case, I believe it's the red carpet case, and I believe it is cited in the briefs. There's also a Pizza Hut case cited in the briefs, and this is Sixth Circuit law, where the district court judge actually made a 90% reduction from the amount that the party was owed. Which of those two are you talking about? The red carpet was a $10,000 award with a $90,000 request, I believe. So that was the issue of a substantial reduction like that. But I'd like to end my comments maybe where I started, is to say that both the award of a sanction and the determination of the amount are issues of discretion to be employed by the district court judge. Judge O'Meara certainly was exasperated and expressed his consternation with me through his orders. But by issuing the existence of the sanction, that was within his discretion, and so was the amount. And in his ruling he says, specifically says, that the amounts that the other parties sought exceeded the scope of what he felt would be there for deterrence. Judge O'Meara, not to use a phrase particularly in these days, my nephew's in the Marines, but Judge O'Meara was on the front line of that. He was engaged completely in this inquiry. And he made his ruling. There's been no showing that his ruling was clearly erroneous or rises to the type of error that should be disturbed. With respect to the issues in the cross-appeal, I can only say that I believed that with this particular case, by filing a declaratory judgment count for a copyright that still had a useful life, that it was trying to get for the future rights the quiet title. I was mistaken. And we have not appealed those underlying issues. Likewise, I have not sought to stay the enforcement of... I'm sorry? You did appeal it. I'm confused. No, the underlying dismissal of the merits. I don't... There is nothing. And likewise, there is no motion or request before this panel in any form to somehow stay the amount of the sanction. I paid the amount of the sanction. You're appealing the sanction order? Only because there was an appeal. I did a cross-appeal on the amount to the extent the court feels that... You're not challenging the award? Because I thought you were. At this point, based upon the argument today, and in all candor, because I take responsibility for this, I would withdraw the cross-appeals in both cases. And I don't believe that Judge O'Meara has abused his discretion. I believe he exercised the wide discretion that the Sixth Circuit would give a district court in the Runfellow Associates case. Thank you, counsel. And may I say that if I ever appear before any of you again, I can only hope that it will not be in this situation. And if it is, then it would be a pattern of conduct. Okay. Thank you. Just very briefly, Your Honor, Your Honor asked about another case where the... And how would you distinguish the red carpet case? Easily, because in the red carpet and the Pizza Hut case, the court did not find that the action was filed frivolously from inception. What the court found was that at some point it became clear to the party that he wasn't going to win, and at that point there was a need to do something about it. There is no case where a court made a finding that from inception it was frivolous, found that the party was entitled to reasonable fees, and then awarded one-tenth of the fees. Not one case. Rule 11 and 1927 are not just for deterrence. It is to reimburse the party for the fees and costs that they had to incur due to frivolous action. There are findings in both cases that these actions... Can you kind of say the contrary in red carpet, though? I mean, in red carpet, didn't we reject an argument, or at least not accept one, that the purpose in Section 1927, at least, is to make... But Rule 11, there's a lot of case law that's cited all in the brief that it's not just for deterrence. There's a lot of case law that supports that. But C-4 says the sanction imposed on this rule must be limited to what suffices to deter repetition of the conduct. Is that 1927 that your Honor is quoting? No, I'm quoting from C-4. There are cases that we cite that talk about the reasonable attorney's fees and being awarded a reasonable attorney's fee for the wrongdoing. And I guess the point is that there's no case that I've been able to locate whatsoever where a court made the finding that's been made in this case, which is that from inception, there was a frivolous action filed and then only awarded one-tenth of the fees, without explaining why, given all the facts here, $20,000 would be sufficient for deterrence. You know, for what it's worth, I do sympathize. As somebody who practiced, I didn't deal with what you've dealt with, but I do sympathize with what you've gone through in this case. And this kind of practice is what makes the practice sometimes just miserable. And so whatever shakes out, you've been heard on that point. Well, I appreciate that, Your Honor. But who really deserves sympathy, because this is what I do for a living, is my client, who's had to suffer through having to pay hundreds of thousands of dollars and incredible stress and everything else related to this. He's an elderly person, and this is not appropriate, and he should not have to pay the price for having to undergo years of this. Thank you. Thank you, Counselor.